Mr. Sheldon, whenever you're ready. Thank you, Your Honor.  I'd like to first address quickly the names of the two witnesses and the victim in this case. I'm just going to call the two witnesses Fook, Lee, and I'm going to call the victim, Victim, because throughout the record he's called by two different names. And I just want to discuss briefly, because I think it's very important to assess the theory at trial and the facts that are not in dispute. What is not in dispute is that the defendant in this case, or the petitioner, had no, about one to two weeks before the murder of the victim, was attacked and beaten at the Springfield Mall. That was presented at trial. That was not contested. That was very important to both the theory at trial for the prosecution and for the defense. And I think it's important for this Court in helping it assess the prejudice of the murder that happened at trial. What was not contested at trial was that the victim died by one gunshot to the head. It was not contested that there were three shots fired. It was not contested that the victim had left Happy Billiards Pool Hall, came out to his car, moved his car, went back, got his glasses, and was shot as he had his hand on the door. And I say that because the various courts below have cited to facts that were not in dispute and were not at issue to the identity of the shooter to support the judgment. What was at issue, and the only issue, was whether Fook and Lee had seen Henno as the shooter and whether they were lying or making up who the shooter was. That was the only issue at trial, the identity of the shooter. The forensics, the medical examiner, it was all irrelevant. None of that was. Well, those two witnesses testified, did they not? Yes, sir. I mean, so how do you get the prejudice when the two witnesses themselves actually testified at trial? You got a chance to cross-examine them, didn't you? Yes, Your Honor. That's correct. And wouldn't you have a better case if Fook and Lee had somehow not been able to testify and their hearsay statements had just come in without their testimony? Yes, absolutely. That'd be a better case. But this is actually... So how do you get the prejudice when they've testified here? That's a good question, Judge Wilkinson. Let me answer that, please. Both courts below, the State Trial Court and the Virginia Court of Appeals both recognized that there was a lot of inconsistencies in the testimony and it was a weak case. Let me take you through just several of the major inconsistencies in Fook and Lee's testimony. Their testimony is actually quite short, they're directing their cross, and it is incredibly evasive, inconsistent, and unreliable. And all... Well, that's, you know, grist for the jerry meal. That's right, Your Honor. And it's all on the points that are most important. Let me bring the court through these very quickly. Fook claimed that at trial that he heard the conversation between the shooter and the victim, yet at the preliminary hearing under an oath, he had claimed he couldn't hear it, and in a recorded statement to the police, he claimed he couldn't hear it. So he was caught in that very basic lie about a very important fact. Sure, but you had a chance to probe the inconsistencies, didn't you? Yes, Your Honor. At first, obviously, it was somebody else at trial, but absolutely he did. And the point here... There's no claim that cross-examination was unreasonably curtailed. That's right. The claim is one that the testimony of Fook and Lee was so inconsistent, so evasive, and so weak, that the addition of the bolstering testimony of the police officers, of the government agents, changed the outcome of the case. And in order to evaluate that prejudice of the bolstering... That's not a constitutional claim as opposed to just a question of state hearsay law. This is a Sixth Amendment case where trial counsel failed to object to the testimony of the police officers. And if they had objected, it would have been kept out. Well, they did object. I mean, he objected in the case of Officer Cooper's testimony. That's right. He objected to Officer Cooper and then failed to object. And... Well, why should he keep popping up? He already objected to Officer Cooper's testimony. There's two excellent reasons why. One, since 1986, the Virginia Court of Appeals said that the inevitability defense of not objecting is not a reason to.  But counsel can, you know, can take into account the fact that you can really make yourself persona non grata before, Jerry, if you keep just standing up and objecting. That's not the evidence of this case, and I'll tell you why. Well, I actually had a question about that. What's the practice in Virginia generally, if there's such a thing, when a lawyer, particularly in a criminal case, asks for a continuing objection? Is that a practice that is allowed and respected in Virginia? In my experience, most judges will allow it and some judges will say no. But for the most part, it is a continuing objection. But let me... Judges generally don't make lawyers continue to pop up, as Judge Wilkinson suggests. Really, juries don't like that. That's right. There's a very, very important reason why the objection was very important in this case. Why didn't the lawyer ask the judge here for a continuing objection to the testimony of these couple of officers? He wishes he did. He submitted a letter saying, I... You see, the objection did continue. Why didn't he? Because he just failed to. He failed to. He was deficient. But when the lawyer objected to Officer Cooper's testimony, what he did get was an instruction to the jury that Officer Cooper's testimony is not for the substance or the identification by Lee of the shooter, but simply for the credibility of the witness. And when he failed... How can there be prejudice when there's going to be an objection? It's almost certain that the objection is going to be overruled. So where's the prejudice in that? I'm sorry. I'll try and finish this explanation. When Trout... I think you should address my question. When trial counsel objected to Officer Cooper, he got an instruction that said Officer Cooper's testimony is only for credibility of the witness. When he failed to object to the next officer, he got no such instruction because he failed to object. So that evidence came in for the identification for the substance. That's why he needs to continue to object. So essentially, are we talking here about this evidence being, what is it, impeaching evidence or what would you have done? I'm sorry, Your Honor. I don't understand the question. Done about what? What I'm saying is, I phrased it wrong. The witnesses here had been, as I understand it, impeached. They'd been cross-examined. Oh, really? And the Commonwealth makes the point that in order to rehabilitate an impeached witness or somebody who's been vigorously cross-examined, and here that you can bring in prior consistent statements to rehabilitate that witness. Yes, sir. That's an exception to the normal safeguards against hearsay, that you can bring in a prior consistent statement, and certainly the earlier statements to Allen and Ellis that were made by Fook and Lee were consistent with their testimony to the extent that the identification of the petitioner remained constant. So, why wasn't that a correct evidentiary ruling in terms of Virginia law, and if it was, how in the world does that constitute ineffective assistance? I think the record is absolutely clear. It was an incorrect ruling because there were no prior inconsistent statements on the identification. There was a lot of inconsistent statements. They were inconsistent internally with their own testimony. They were, Fook and Lee, were inconsistent with each other, but they were never impeached with a prior inconsistent statement of their identification of the shooter. And the Virginia court, and that was so conceded by the Commonwealth in the state court, it was accepted and it was found as error by the Court of Appeals, and in state habeas, Judge Rausch said, I'm sorry for that mistake. I was absolutely wrong in making that ruling, and you have that transcript of her ruling. So, everybody agrees. All the judges agree it was a mistake. They also agree it was harmless. That's right. And so, why isn't it, do we have the authority to examine a state court decision that an Yes. How do we do that? Particularly in light of the fact, if I understand the record here, there was no objection to, and there's no question that the photo array testimony was properly admitted, right? That's right. So, you had the two witnesses putting aside their inconsistent statements on other matters, as you just conceded, they were never inconsistent on their identification, they were never inconsistent at trial on their identification of your client as the shooter. Yes. Furthermore, there was photo array evidence through Officer Allen, right? Yes. That they had made in prior out of state identification of your client as the shooter. Yes. So, with that array of substantive evidence of criminal agency, on what basis could we as a federal court, or could Judge Brinkman below, conclude that the Court of Appeals of Virginia and the Post-Conviction Court of Virginia's decisions that this was harmless error, how do we disturb that? That's a good question, Your Honor. Thank you. I think the most difficult thing for my case, for prejudice, is the photo array. I think everything else is easily, the state court, the state habeas court relied on nothing. Judge Brinkman relied on all the wrong things. The Virginia Court of Appeals said that we must reverse this case unless it plainly appears from the record that the error didn't affect the verdict, and they cited to the testimony of Officer Cooper, the objected testimony that was led in Officer Cooper, the unobjected testimony in the photo array. The photo array is our biggest problem on prejudice, of course, because it appears that it was not objected to, and it's not the same here. And it would have been properly overruled had it been objected to. Perhaps, perhaps. What do you mean, perhaps? It was cumulative, Your Honor. In fact, in many cases, when ... Oh, no. Criminal agency evidence is never cumulative, Mr. Shultz. Come on. When Book and Lee testified at trial, they said the question was, who shot the victim? And they pointed to a hand no. And the photo array, there's two things about the photo array which don't make it very important for our prejudice analysis. One is the photo array came in the police station hours later. And the second is ... I mean, so what? I don't mean to interrupt, but so what? So the theory at trial was that, not that they didn't know who hand no was. So identifying hand no in the photo array, after they speak to Tiny, after they speak to Tony, after they wait 20 minutes to call ... Judge Traxler, may I continue answering that question? Yes. After they wait 20 minutes to call the police, they go to the police station, and the photo array ...  It does go to wait, but Your Honor ... But that makes it a jury argument, not an admissibility argument. That's right. But it's not defeating the strategy of trial counsel, which was to show that they were making up the story that hand no shot the victim. And when I say cumulative, I really mean that Book and Lee were in court and said hand no shot the victim. The fact that the police officer testified, they said that at the police station, really didn't add much. And I'll reserve the rest of my time for rebuttal. Thank you. Thank you. Mr. Staller. Good morning. May it please the court. My name is Craig Staller, Virginia Office of the Attorney General, Counsel for the Respondent. To address the issue Judge Wilkinson raised initially, Book and Lee were both impeached with prior inconsistent statements at trial, based on statements they gave to the police. At appendix sites, page 122 to 126, and also 126 to 127, and on page 127, there's three separate incidents regarding whether or not they heard statements made by the defendant to the victim. First, it was, you made no statements of this, hearing this to the police officers at the time. You did not make that statement in your written statement. You did not make that statement in your recorded statement. So they were impeached for prior inconsistent statements? They were impeached for prior inconsistent and... Which would bring it squarely within the exception. That's correct, Your Honor. And under the case Jones, which I cited last Friday to bring to the court's attention, it's clear that prior inconsistent statements by omission is a prior inconsistent statement. Failing to say something at a time when it would have been reasonable to say it counts as a prior inconsistent statement. Here they're testifying, I heard the conversation between the two parties. He said, are you a member of AYD, or in the alternative, did you jump me? Why did people jump me last week? Either one of those statements, neither one was made to the police at the time, would have been reasonable to make that statement at the time, given the other identity. Those were inconsistent with regard to criminal agency, were they? They weren't, but what the argument from the petitioner is, is that those statements were never made previously. So that this was the first time anybody learned these statements were heard by these witnesses was at trial. And that was inconsistent with what they had previously told police, therefore their credibility was knocked down, so to speak, because of that inconsistency. But we're here under an AEDPA standard, aren't we? We are, Your Honor. This is 1954. So the state courts, I guess the Virginia Supreme Court didn't look at this, so that state court of appeals was the highest state court that took a look at it. On direct appeal, you're correct, Your Honor. Pardon me? On direct appeal, the court of appeals was the highest, is the Supreme Court... Well, what's the operative decision? Is it the court of appeals' decision on direct appeal or state post-conviction? The state habeas court's decision... Because they explored the ineffectiveness claim. That is correct, Your Honor. Okay, and with regard to the ineffectiveness claim, the state post-conviction court made a finding of no prejudice. That is absolutely correct, Your Honor. And that has to be unreasonable, an unreasonable application of clearly established... It's either got to be directly contrary to established Supreme Court precedent or unreasonable determination of facts established by clearly... And your point is how can that be unreasonable given the fact that Fook and Lee testified that their testimony with respect to the essential fact at issue, which was the identification of petitioner as the one who committed the offense, that that couldn't be prejudice in light of that, couldn't be prejudice also in the fact that they had a good view that they knew this person beforehand, they knew the petitioner beforehand. And Judge Brinkheimer goes into some depth in talking about the non-testimonial evidence here, bullet holes, cartridge casings found on the scene, bolstered, corroborated Fook You have this observation by Officer Greer, which is that the petitioner had a dragon tattoo on his arm and that corroborated exactly what these two eyewitnesses to the crime had indicated in their testimony at trial. And so in light of all this, it's a pretty straightforward case, and how do we possibly get to the point of saying that the state post-conviction court was clearly, it was unreasonable in its conclusion? That's about all there is, isn't it? And I completely agree with you, Your Honor. I think the burden the petitioner has is to establish either unreasonable application of federal law or an unreasonable determination of facts established by clear and convincing evidence. The most the petitioner has shown is that, well, there are some inconsistencies, therefore they must have been lying, therefore we win. And it's not that simple. I mean, what the state habeas court basically established was that even if you took out the purported hearsay stuff from trial- But you don't concede that that state evidentiary ruling was an erroneous one. Absolutely not, Your Honor. Because you think that these- Even though the Court of Appeals of Virginia says it was. That's right. And the reason they said it was was because on direct appeal, our office did concede that that was- Oh, it's your office's fault. Well- Not your fault, your office's fault. I was not one, but I'm here today. It's my record. I take responsibility for it. But I will say what the Court of Appeals did was they did not say the concession was correct or given- All they did was say, given the concession, we will adjust harmless error. What the Court of Appeals of Virginia does is they will determine a fact on the narrowest possible grounds. So if this concession, as it was in this case, say we concede this was error, instead of going back and re-examining the whole issue, they'll say, well, okay, if you're assuming it's error, let's find out it's harmless. That's the way they do that. And that's by statute that they're required to do that. And by their own case law, they have to determine. So that's how it happened. Right, wrong, or indifferent, that's the procedural history. But you kind of stuck with that, weren't you? I don't know if I'm necessarily stuck with it. I think my job- You conceded it. It was conceded by the Commonwealth on direct appeal. I'm now the warden, for whatever difference the court wants to make that. What's the difference? I mean, at this point, my position is I want the court to be aware of all the procedural issues, what's going on. The court's obviously free to take into account what it wishes to, disregard those things it doesn't. I just want the court to be aware of that the trial court's basis for- Ms. Shelton says that the trial court apologized for her erroneous ruling. And that was probably- You think that was pointless? She shouldn't have done that? I think it was unnecessary. If she wanted to apologize, it's obviously, she's a trial judge, she can do what she wants to do, just as this court can do as it pleases it. I don't know why people say that. Courts cannot do what we want to do. Well, from this perspective, it sometimes looks that way. But in any event- The other point is that, no, it's all essentially of no moment in light of the fact that you've got two people who testified who were eyewitness. They were not only eyewitnesses, but a lot of people think that eyewitness testimony is dubious, depending on the circumstances. But in this case, the eyewitnesses knew the petitioner beforehand. So there wasn't any of that back and forth about the reliability of eyewitness testimony, because they knew him. Right. They knew him. And what the State Habeas Court did, and the State Habeas Court's finding of no prejudice was based on the assumption that the trial court's evidentiary rulings were indeed erroneous. So the State Habeas Court basically found that even excising this erroneously admitted hearsay, there still was ample evidence, substantial evidence to convict, namely the testimony of the two eyewitnesses who saw the- So it was harmless error. Essentially yes. There's no prejudice. Again, as the courts indicated, the out-of-court statements, out-of-court identification was going to come in. The only evidence that came in erroneously, assuming it was error, was basically background information about the facts leading up to the shooting, such as going in and out of the billiards pool, where they stopped the car, who got out, none of which relates specifically to the actual shooting. Of course, you agree. The point is not whether they knew the defendant. The point was whether they saw the defendant shoot the victim. Correct. And they both testified to that. The petitioners argued that the sitting in this low, sporty car, they could not see, although one of the witnesses testified, they could see from his midsection up to the top of his head, not just up to the midsection, but from the waist up. Person sitting in the front seat saw him coming up to the car, had full opportunity to see him. He went back to the front of the car where he pulled the gun and shot the victim. They have been consistent in their testimony at trial. They were consistent with their identification immediately after the incident occurred. There is no impeachment as to their identification. All the impeachment and most of what is discussed by the petitioner deals with failing to remember things. Now, what's important to note here is this trial happened four years after the incidents occurred. So, whether or not they remember specifically speaking to Detective Ellis or Detective Allen at a particular time, four years after the fact. But they didn't forget the only thing that mattered. Exactly. Whether they remember the sequence of events, whether they remember who they spoke to first, the issue is they never forgot the fact that the person who did the shooting was the defendant. They never wavered on that issue. They were never impeached. There was nothing to indicate that was wrong, that they got it wrong. So it seems, as the courts indicated, there is no prejudice. Everything else I talked about will deal with deficient performance, which obviously the court need not reach. But it seems clear that based on the record before it, the State Habeas Court correctly found there was no prejudice. The District Court also did a fine job laying out the facts of this case, why there was no prejudice. All the testimony from the witnesses was corroborated by the forensics. While it's extrinsic to the facts at issue, it's telling that their story completely matches with all the other evidence at trial. This is not a completely fabricated story. And it seems to me that once a certain number of facts are corroborated, those facts that can't be corroborated might have a better tendency to be credible to a fact finder or jury given the fact that everything else they said is in fact corroborated by the forensics to the extent it could be. So for those reasons, unless the court has any additional questions, because there was no prejudice in this case, I would ask the court to affirm the District Court. Sheldon? I'll briefly address the prejudice question. I'll also note that in State Habeas, the warden conceded that the evidentiary ruling was error in the State Habeas Court. I think what makes the case really interesting, Mr. Sheldon, is that it appears to me that your burden is a very significant one. And that is to show the Court of Appeals decision that the error was harmless is unreasonable. Do you agree that that's what it comes down to? No, Your Honor. I'm sorry. Well, aren't you really here arguing that if the lawyer had done a better job of keeping out certain evidence, then your client, having been convicted, would have won a new trial from the Court of Appeals of Virginia. And so therefore, what you're here arguing, in effect, is that we have to examine the Aren't you here arguing that the decision of the Virginia Supreme Court, the Court of Appeals, was unreasonable insofar as it concluded that the error of the lawyer was harmless? Let me articulate the standard. Because if the error was harmless, then there's no prejudice, right? Correct. Let me articulate the standard just a little bit and step back for one second. The State Habeas Court and Judge Brinkman, neither one of them analyzed whether the outcome on appeal would have been different. Both of them simply said, at trial, you still would have had Officer Cooper, so no difference. Neither one reached the question. That's why I'm taking you back to the Court of Appeals. Which is, and so I would argue 2254D, the unreasonableness patina of AEDPA doesn't apply because the state court did not reach this issue. But what does apply is your standard ineffective assistance of counsel does But if the error of the lawyer was harmless, if the error of the lawyer in failing to object, let's assume that's deficient. Yes. All right? And therefore, some evidence came in that, had there been an objection and had the trial judge correctly ruled, that objection would have been sustained and that evidence would not have been admitted. That's right. Right? That's right. But if the error is harmless, how can it be prejudicial that it happened in the first place? The error that was found harmless, that is, the admission of the evidence, the court found it harmless because Officer Cooper's testimony was redundant with Ellis and Allen's. But remember this, the testimony that was redundant was Officer Cooper said, at the crime scene, Officer Cooper's testimony was at the crime scene, the Fook and Lee told me that Phi Liu did it, Phi Liu is Heno, that Heno did it. The objection... And then they confirm that in a photo array, you say, hours later. Hours later. So where's the prejudice? The prejudice is that Detective Allen and Detective Ellis's testimony came in without objection as substantive testimony. As did the photo array testimony. As did the photo array. But the photo array comes after all this time that they have. Remember, the theory at trial wasn't that they were mistaken eyewitness identification. The theory at trial was that because of their fear of retaliation by Heno, and because they couldn't tell who did the shooting, they call Tiny, they call Tony, they wait 20 minutes, and then they come up with this story that Heno was the shooter. The fact that at the police station, they can identify Heno, remember this dragon tattoo business is nonsense, it's a red herring, a dragon tattoo, nobody saw any tattoos at the crime scene. Let me ask you a question on this sort of interesting point and interplay between the Court of Appeals and the State Habeas Court. The fact that the Court of Appeals deemed the error to be harmless is sort of icing on the cake for the state's court, but the emphasis in Strickland is whether there was a reasonable probability that, not possibility, but a reasonable probability that the result at trial would have been different, and if the question is whether there's a reasonable probability that the result at trial would have been different, then that would make the operative decision that of the state post-conviction court, rather than the state Court of Appeals, although I agree that the harmlessness ruling of the state Court of Appeals is some additional evidence as to why the state post-conviction court decision was a reasonable application of clearly established law, but given Strickland's focus and words and given the focus of all the ineffectiveness claims, it would have to be the ultimate decision that we are reviewing, the operative decision would be that of the state post-conviction court. You are reviewing the decision of the state post-conviction court in the sense that AEDPA says that we have to give deference to it, but the idea that our Sixth Amendment claim, our claim that less than a preponderance of the evidence, that our prejudice standard is less than a preponderance of the evidence, that we have to show the outcome of the proceeding would be different. The proceeding in Strickland, of course, with the trial, here our proceeding is both the If the objection had been made at trial, we would have had a different outcome in the Court of Appeals. Yeah, but I'm not sure how far I want to go down that road because I think the whole focus of Strickland is whether there's a reasonable probability that the result at trial would have been different. That's what the focus seems to be, and that's what the state post-conviction courts are in a particularly advantageous position to explore because we can't, we don't really resolve ineffectiveness claims on direct appeal up here. This is a claim of ineffective assistance, and we don't explore those claims on direct appeal unless there's something just horribly egregious. We leave it to the fact finder, and so the same model should apply within the state system, which is that, you know, what we're reviewing is an ineffectiveness claim, and the Virginia Court of Appeals is not the proper body to be resolving that. It's the court with the fact-finding capability. Thank you, Your Honor. We're going to come down and greet counsel, then take a break for about five or ten minutes.
judges: William B. Traxler, Jr., J. Harvie Wilkinson III, Andre M. Davis